UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00234-TBR

DOUGLAS W. GREENE                                                                    PLAINTIFF

v.

IPA/UPS SYSTEM BOARD OF ADJUSTMENT                                 DEFENDANT

and

UNITED PARCEL SERVICE CO. and           INTERVENOR DEFENDANTS
INDEPENDENT PILOTS ASSOCIATION

**Memorandum Opinion and Order**

This matter is before the Court upon Plaintiff Douglas W. Greene's "Motion for the Immediate Recusal of Defendant's Legal Counsel." [DN 42.] Intervenor Defendant Independent Pilots Association has responded, [DN 49], and Greene has replied, [DN 74]. Greene's motion is now ripe for adjudication. For the following reasons, Greene's motion to recuse [DN 42] is DENIED.

**Background**

This case and its companion cases, *Greene v. Frost Brown Todd, LLC, et al.*, No. 3:14-CV-00619, and *Greene v. Independent Pilots Association, et al.*, No. 3:14-CV-00628, arise from Douglas Greene's dismissal from his employment as a pilot for UPS. In this case, Greene seeks to overturn the IPA/UPS System Board of Adjustment's determination that he was properly terminated for cause. Greene has moved to disqualify the law firm Priddy, Cutler, Naake, & Meade (PCNM), and

specifically attorney Irwin Cutler, from representing IPA in these related cases.[1] *See* [DN 42.] He argues that PCNM and Cutler have an irreconcilable conflict of interest because they represented IPA during UPS's termination of Greene, and now represent IPA in the proceedings brought by Greene against IPA.

In 2013, Greene was employed as a pilot for UPS. [DN 19-15 at 8.] Following a dispute over a notation UPS made in Greene's employment history, UPS became concerned that Greene was no longer fit to fly. *See* [*id*. at 20-22.] As such, UPS removed Greene from duty with pay, and ordered him to submit to a medical examination. [*Id*. at 32.] Greene refused, claiming that under the terms of the Collective Bargaining Agreement (CBA), UPS did not have objective evidence indicating that Greene was unfit for duty. [*Id*. at 36-38.] Following his refusal, UPS terminated Greene for insubordination. [DN 15-8.]

Independent Pilots Association, the union that represents UPS's pilots, filed a grievance on Greene's behalf. The CBA between UPS and IPA requires just cause to terminate an employee. [DN 19-15 at 3.] IPA and Greene contended that UPS's mandate that Greene submit to a medical exam was unjustified, and his refusal was thus not insubordinate. Pursuant to the CBA and the Railway Labor Act, UPS and IPA convened a System Board of Adjustment to hold an arbitration hearing to determine whether Greene was dismissed for just cause. Greene retained attorney Arnold Feldman to represent him at the hearing, and IPA

---

[1] In *Greene v. Independent Pilots Association, et al.*, No. 3:14-CV-00628, Greene filed a motion to disqualify PCNM and Cutler that is essentially identical to the instant motion. As he asserts the same grounds for recusal in both motions, the Court's reasoning in denying both motions is also the same.

2

retained Irwin Cutler, an attorney at Priddy, Cutler, Naake & Meade, to represent the union. Both counsel were present at the hearing. [*Id.* at 2.] Ultimately, the System Board issued a split decision upholding Greene's termination. [*Id.* at 57.]

Greene has filed three suits relating to this series of events. In this case, Greene seeks to overturn the System Board's Award upholding his termination. IPA is still represented by Cutler and PCNM. In his instant motion, Greene seeks to disqualify PCNM, and specifically Cutler, from representing IPA in these cases because of their alleged conflict of interest. *See* [DN 42.] IPA has responded, [DN 49], and Greene has replied [DN 74]. Fully briefed, this matter is now ripe for adjudication.

## Standard of Review

District courts possess broad discretion when deciding whether counsel for one of the parties before it should be disqualified. *See Moses v. Sterling Commerce (Am.), Inc.,* 122 F. App'x. 177, 183 (6th Cir. 2005). "[D]isqualification is a drastic measure which courts should be hesitant to impose except when absolutely necessary[,]" *Zurich Ins. Co. v. Knotts,* 52 S.W.3d 555, 560 (Ky. 2001), because "the ability to deny one's opponent the services of capable counsel[] is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir. 1988). Disqualification is warranted when "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification."

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (citations omitted). "[T]he Kentucky Rules of Professional Conduct are the 'persuasive authority, if not governing standards, for practice before [the Western District of Kentucky].'" *Kittle v. C–Plant Fed. Credit Union,* No. 5:08–CV–00114–R, 2010 WL 292689 (W.D. Ky. Jan. 20, 2010) (citing *Carlsen v. Thomas,* 159 F.R.D. 661, 664 (E.D. Ky. 1994).

**Discussion**

The Kentucky Rules of Professional Conduct, which guide the Court's analysis in this case, prohibit an attorney from representing a client whose interests are adverse to those of a former client in the same or a substantially related proceeding. Douglas Greene asserts that Irwin Cutler, counsel for Independent Pilots Association, also represented Greene in his UPS termination proceedings. Because those proceedings were substantially related to these cases, and because IPA's interests are now adverse to Greene's, he believes that Cutler and PCNM must be disqualified from representing IPA. However, when a union's attorney advocates on behalf of a union member during disciplinary proceedings, the attorney represents the union, not the member. Cutler held himself out as IPA's counsel, not Greene's, and Greene employed his own counsel to protect his personal interests. Therefore, no conflict of interest exists in this case, and Cutler and PCNM need not be disqualified.

At the outset, the Court must first determine what rules govern the conduct of the attorneys in this case. In his motion, Greene claims that PCNM and its

4

attorneys have violated various provisions of the Kentucky Rules of Professional Conduct. IPA does not claim that any other rules of conduct apply. This Court has not expressly adopted any professional standards to govern the conduct of attorneys. However, attorneys seeking admission to practice before this Court must be admitted to practice before the Supreme Court of Kentucky and be in good standing with that court. LR 83.1(a). Additionally, attorneys seeking leave to appear *pro hac vice* must "consent to be subject to the jurisdiction and rules of the Kentucky Supreme Court governing professional conduct." LR 83.2(a)(3). Finally, "[i]f it appears to the Court that an attorney practicing before the Court has violated the rules of the Kentucky Supreme Court governing professional conduct," the Court may order an attorney to show cause why the Court should not discipline the attorney. LR 83.3(c). These rules imply that the Kentucky Rules of Professional Conduct are the "persuasive authority, if not governing standards, for practice before this Court." *Carlsen v. Thomas,* 159 F.R.D. 661, 664 (E.D. Ky. 1994). As such, this Court will rely upon the Kentucky Rules of Professional Conduct to determine if PCNM and its attorneys should be disqualified from representing IPA in this action. *See also Winchester v. Educ. Mgmt. Corp.*, No. 5:10-CV-00012-TBR, 2010 WL 2521465, at *1 (W.D. Ky. June 18, 2010) (applying Kentucky Rules of Professional Conduct in ruling on motion to disqualify).

Greene alleges that, by representing IPA in his termination proceedings and in the instant action, PCNM and its attorneys have violated Kentucky Supreme

5

Court Rules 3.130(1.1), 3.130(1.7), 3.130(1.9), 3.130(1.10), and 3.130(8.4).[2] [DN 42 at 3.] As alleged violations of these Rules are the crux of Greene's arguments, they are quoted below, in pertinent part.

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Ky. S. Ct. R. 3.130(1.1).

> (a) . . . [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Ky. S. Ct. R. 3.130(1.7).

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would

---

[2] Greene also claims that PCNM and its attorneys violated Ky. S. Ct. R. 3.130(1.0). However, this rule is merely a definitional section, and imposes no standards of conduct upon attorneys.

> permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Ky. S. Ct. R. 3.130(1.9).

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Ky. S. Ct. R. 3.130(1.10).

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> (d) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or
>
> (e) knowingly assist a judge or judicial officer in conduct that is a violation of applicable Rules of Judicial Conduct or other law.

Ky. S. Ct. R. 3.130(8.4).

While these rules guide the Court's analysis, they are not outcome-determinative. The Preamble to the Kentucky Rules of Professional Conduct states:

> [V]iolation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. . . . Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct.

Ky. S. Ct. R. 3.130(XXI). Thus, to succeed on his motion, Greene must do more than prove a bare violation of the Kentucky Rules. The Sixth Circuit has stated that disqualification is only warranted when "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification." *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (citations omitted).

Here, Greene raises several grounds for disqualification, but his central contention is that PCNM is barred from representing IPA in this matter based upon a former client conflict. Kentucky Supreme Court Rule 3.130(1.9) prohibits "[a] lawyer who has formerly represented a client in a matter . . . [from] represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Furthermore, SCR 3.130(1.10) imputes all non-personal conflicts of interest to all members of the conflicted law firm. Therefore, if one member of PCNM has a conflict of interest in this case, then all members have a conflict.

8

Greene's argument is predicated upon the notion that he was, at one time, a client of PCNM. IPA advocated on Greene's behalf during his UPS termination proceedings. During those proceedings, IPA was represented by Cutler from PCNM. According to Greene, because he was represented by IPA, and because IPA was represented by Cutler, Greene was Cutler's client. If this were the case, PCNM would have a conflict of interest under SCR 3.130(1.9) and (1.10), because Greene would be a former client of the firm, and this case is substantially related to his UPS termination.

However, Greene's argument falters at the very first prong of *Dana Corp.*, 900 F.2d 882 at 889, because he cannot establish that an attorney-client relationship ever existed between himself and the attorneys of PCNM. Rather, the facts of this case indicate that Cutler and PCNM represented only IPA, and not Greene personally, during UPS's disciplinary proceedings. For instance, in an email from Cutler to Tony Coleman, counsel for UPS, prior to Greene's termination hearing, Cutler states, "[T]he Independent Pilots Association has retained me as *counsel for IPA* to represent Captain Greene in the matter of his disciplinary hearing and any related proceedings." [DN 42-2 at 1 (emphasis added).] Although IPA did advocate on behalf of Greene, Cutler held himself out to be counsel for IPA, not Greene personally. In the briefing prior to Greene's termination hearing, Cutler filed briefs on behalf of IPA, not Greene. *See* [DN 45-3; DN 45-4]. Greene was also aware of this arrangement. In a letter from IPA leadership to Greene, IPA stated that "IPA will make available a local SDF attorney

9

we have selected to provide legal representation to you *as IPA's attorney*." [DN 43-2 at 1 (emphasis added).]

Granted, a layperson may very well believe that when a union says, "our attorney will represent you," the union's attorney is also his attorney. But here, Greene could not have reasonably believed that was the case, because he employed his own personal counsel, Arnold Feldman. In fact, after IPA leadership offered via letter to provide Greene with union counsel, Feldman replied, disputing IPA's ability to fairly represent Greene's interest. *See* [DN 49-2.] Throughout Greene's case, Feldman corresponded with IPA and Cutler on Greene's behalf. *See, e.g.*, [DN 43-3; DN 46-2.] During Cutler's correspondence with Feldman, Cutler again held himself out as IPA's counsel, not Greene's, stating, "I plan to represent your client to the upmost [sic] of my ability but, as with any union I represent on behalf of an employee who has been disciplined or otherwise wronged under a CBA, my client is the union." [DN 49-3 at 1.] Finally, in Greene's Complaint in his suit against IPA, he admits that "IPA's outside counsel . . . is Irwin 'Buddy' Cutler of Priddy, Cutler, Naake & Meade PLLC." [DN 45-2 at 4.] Greene attached that Complaint in support of the instant motion.

Other courts considering this issue have similarly held that during an employment grievance proceeding, counsel for the union represents the union itself, not the particular employee. For instance, in *Griesemer v. Retail Store Employees Union, Local 1393*, the plaintiff contended that the local union had not adequately represented her during her grievance proceeding against her employer. 482 F.

10

Supp. 312, 313 (E.D. Pa. 1980). As part of that suit, the plaintiff filed a motion to disqualify the local union's attorney, Richard Sigmond, because Sigmond was a partner of Bernard Katz, the attorney who represented the union during the plaintiff's grievance proceeding. *Id* at 314. Holding that Sigmond need not be disqualified, the court found that Katz represented only the union, and not the plaintiff, during the plaintiff's employment grievance. *Id*. at 314-15. The court pointed out that "at no time did Katz formally represent or hold himself [out] to be plaintiff's attorney." *Id* at 314. Additionally, the plaintiff admitted that she was aware Katz did not represent her during the grievance, and had in fact retained her own counsel during the entire proceeding. *Id*. at 314-15. As such, no conflict of interest existed.

Similarly, in *Hague v. United Paperworkers International Union*, the plaintiff sued his union for its alleged failure to fulfill its duty of fair representation during his termination proceedings. 949 F. Supp. 979, 981-83 (N.D.N.Y. 1996). During the plaintiff's termination hearing, the local union was represented by attorney Bruce Bramley. *Id*. at 982-83. As a part of his fair representation claim, the plaintiff alleged that "because he was not told that [the union], rather than he, was Bramley's client, a conflict of interest was present to which plaintiff did not consent." *Id*. at 987. The court rejected the plaintiff's argument, holding that the union, rather than the plaintiff, was Bramley's client at the hearing, and thus "[t]hat relationship did not give rise to a conflict of interest with respect to [the] plaintiff." *See also Hayes v. Bakery, Confectionery and Tobacco Workers Int'l Union*

11

*of America, Local 213 AFL-CIO*, 914 F.2d 256, No. 89-6349, 1990 WL 130488, at *3 (6th Cir. Sept. 11, 1990) (unpublished table decision) ("counsel for a union are excepted from [the] general rule" that counsel to an unincorporated association represents each member individually); *Adamo v. Hotel, Motel, Bartenders, Cooks and Restaurant Workers' Union*, 655 F. Supp. 1129 (E.D. Mich. 1987).

The above cases demonstrate that it is not unprecedented for a labor union to support one of its members in one proceeding, and then become aligned against the member in the next. Extending Greene's argument to its logical conclusion would require "every labor union to retain several law firms to handle specific areas of potential litigation or proceedings in which the union may become embroiled." *Griesemer*, 482 F. Supp. at 315. This result is untenable. Here, it was clear from the very beginning that Cutler and PCNM represented IPA, not Greene personally. Granted, IPA's interests were aligned with Greene's during the arbitration proceeding, and IPA advocated on Greene's behalf, but the law requires more. To disqualify Cutler and PCNM based upon a former client conflict, Greene must prove that "a past attorney-client relationship existed" between himself and PCNM. *Dana Corp.*, 900 F.2d at 889 (6th Cir. 1990). He has not done so.

Greene raises other arguments seeking to disqualify IPA's counsel. First, he asserts that PCNM has a concurrent conflict of interest under SCR 3.130(1.7). [DN 42 at 2.] Here, Greene's contention is that UPS pilots are members of IPA until, among other things, they are terminated. [*Id*. at 4.] Because Greene is seeking to overturn the arbitration that upheld his termination, Greene argues that he is

12

still a member of IPA. *See* [*id.*] But again, this argument is predicated upon the notion that members of IPA are clients of IPA's counsel. As explained above, this is not the case. Greene is not now, nor has he ever been, a client of PCNM or Cutler, so no concurrent conflict of interest can exist in this case.

Next, Greene contends that PCNM and Cutler have violated SCR 3.130(1.1). [DN 42 at 3.] This rule imposes a duty of competence upon lawyers practicing in the Commonwealth, requiring them to possess "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Ky. S. Ct. R. 3.130(1.1). By its terms, this Rule states that the duty of "competent representation" is owed "to [the] client," not to other parties in the litigation. *Id.* Because PCNM and Cutler do not, and never have, represented Greene in an attorney-client relationship, Greene cannot argue that they have violated their duty of competence with respect to Greene himself. And Greene has no standing to argue that PCNM and Cutler have failed to fulfill that duty with respect to IPA, their true client. Rule 3.130(1.1) provides no basis for disqualification in this matter.

Finally, Greene asserts that PCNM and Cutler should be disqualified form representing IPA because they have violated SCR 3.130(8.4). [DN 42 at 3.] That Rule prohibits attorneys from violating the Rules of Professional Conduct or assisting others in doing so, committing criminal acts, engaging in fraudulent conduct, or stating an ability to improperly influence the outcome of proceedings. Ky. S. Ct. R. 3.130(8.4). Several of the Rule's provisions are clearly inapplicable

13

here. Greene does not allege that PCNM and Cutler have stated an ability to improperly influence these proceedings or have assisted a judicial officer in violating the Rules of Professional Conduct. At various times, Greene does accuse IPA's attorneys of engaging in criminal conduct, but points to no convictions or ongoing criminal investigations. As explained above, IPA's attorneys have not violated the rules prohibiting certain conflicts of interest, the only rules (besides SCR 3.130(8.4)) at issue here. This leaves only SCR 3.130(8.4(c)), which states that attorneys may not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Greene's filings in these cases are replete with allegations that nearly every person and party involved is engaged in fraudulent conduct. However, in this motion, Greene fails to point to any evidence of record explaining just how IPA's attorneys have committed "fraud." Rather, Greene's allegations are merely conclusory statements, unsupported by material evidence. PCNM and Cutler cannot be disqualified based upon SCR 3.130(8.4).

## Conclusion

During "a labor dispute with an employer it is the union which carries on the dispute. The member's rights must be exercised through the union and it is the union which is the client of the law firm." *Adamo v. Hotel, Motel, Bartenders, Cooks and Restaurant Workers' Union*, 655 F. Supp. 1129, 1129 (E.D. Mich. 1987). As the Ninth Circuit has stated:

> [W]hether it be house counsel or outside union counsel, where the union is providing the services, the attorney is hired and paid by the union to act for it in the collective bargaining process.

14

> We recognize that there are cases in which an attorney represents the union in an arbitration proceeding, but the underlying grievance belongs to a particular union member who has a very real interest in the manner in which the grievance is processed. That union member surely is justified in expecting the attorney to perform in a competent and professional manner; a portion of his dues is paid to enable the union to represent his interests vis-a-vis his employer effectively in all stages of the collective bargaining process. Nevertheless, when the union is providing the services, it is the union, rather than the individual business agent or attorney, that represents and is ultimately responsible to the member.

*Peterson v. Kennedy*, 771 F.2d 1244, 1258 (9th Cir. 1985). IPA did indeed advocate on Greene's behalf during his UPS termination proceedings. During those proceedings, as during these, IPA was represented by PCNM and Irwin Cutler. But the prevailing rule is that when a union represents one of its members during a disciplinary proceeding, its counsel represents only the union, and not the individual member. The facts of this case are in line with that rule and do not compel a different result. Greene was never a client of PCNM or Cutler, so there is no basis for this Court to disqualify them from representing IPA in these cases.

## Order

For the foregoing reasons, IT IS HEREBY ORDERED:

Plaintiff Douglas W. Greene's "Motion for the Immediate Recusal of Defendant's Legal Counsel" [DN 42] is DENIED.

CC: Counsel of Record
Douglas Greene, *pro se*